1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

11   CASSAUNDRA ELLENA,                          No. C 12-05401 SC (LB)

12              Plaintiff,                        **ORDER REGARDING DEFENDANT'S
                                                  MOTION FOR A PROTECTIVE
13        v.                                      ORDER AND PLAINTIFF'S
                                                  ADMINISTRATIVE MOTION FOR
14   STANDARD INSURANCE COMPANY et al.,           LEAVE TO SUBMIT A
                                                  SUPPLEMENTAL DECLARATION**
15              Defendants.
                                                  ECF Nos. 38, 39, and 44
16

17   _____/

18                              **INTRODUCTION**

19        Plaintiff Cassaundra Ellena worked for the County of Sonoma starting in 2008 until she stopped

20   working in April 2010 based on her medical condition.  Second Amended Complaint ("SAC"), ECF

21   No. 6, ¶ 10.[1]  She submitted a claim for disability benefits to Defendant Standard Insurance

22   Company, which contracted to provide disability insurance to County employees.  *Id.* ¶ 6.  Standard

23   Insurance denied Ms. Ellena's claim and appeal, and this lawsuit challenges that determination.  *Id.*

24   ¶ 12.  An issue in the case is whether the insurance policies' definitions of what it means to be

25   disabled from one's "own occupation" or "any occupation" violated California law.  *See* 6/24/13

26   Order Denying Motion to File Third Amended Complaint, ECF No. 36, at 5-6.  Ms. Ellena wants to

27   _____

28        [1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-
     generated page number at the top of the document.

UNITED STATES DISTRICT COURT
For the Northern District of California

depose (1) the Vice President of Standard Insurance Services Group regarding the definitions of disability in the policy and (2) a Rule 30(b)(6) witness about the same topic, including the reasons for its adoption.  Standard Insurance seeks a protective order on the grounds that (1) the Vice President is an apex employee without any unique, non-repetitive, first-hand knowledge of the facts at issue in this case and (2) the Rule 30(b)(6) deposition is aimed at a legal conclusion, and the adoption of the definitions in 1999 are irrelevant to the 2010 denial of Ms. Ellena's benefits at issue in this case.  Motion, ECF No. 38.

For the reasons stated below, and on this record, the court finds that the Vice President is an apex employee without unique personal knowledge, finds that the Rule 30(b)(6) testimony is at best premature, and grants the protective order without prejudice to Ms. Ellena raising the need for the Rule 30(b)(6) testimony after the currently-scheduled Rule 30(b)(6) deposition regarding the claims manual and procedures used to review, evaluate, and decide claims.

## STATEMENT

Standard Insurance seeks a protective order to prevent the following two depositions:

6.  Jim Harbolt

. . . .

7.  PMK concerning the "Definition of Disability" policy form that appears in the disability policy sold to the County of Sonoma (and under which Cassaundra Ellena was insured) including but not limited to its adoption, the reasons for its adoption, and the nature and extent of its use since Standard since its adoption.

Ex. 13 to Vana Decl., ECF No. 140-1 at 89.

Mr. Harbolt, the Vice President of the Insurance Services Group ("ISG"), is an attorney, one of eight executive officers at Standard, and reports directly to the CEO.  Harbolt Decl., ECF No. 41, ¶¶ 1, 4.  He is responsible for overall strategy and management of the following areas of the ISG: employee benefit sales, actuarial, underwriting, legal, individual disability insurance, and the Standard Life Insurance Company of New York.  *Id.*  ¶ 5.  The vice presidents of sales, actuarial, underwriting, and ISG legal report to him directly.  *Id.* ¶  6.

The deposition notice does not specify the topics for the Harbolt deposition, but Ms. Ellena's counsel's email sent during the meet and confer process specifies that she wants to depose him about

UNITED STATES DISTRICT COURT
For the Northern District of California

"whether Standard knew the California definition of total disability and other applicable case law," what "Standard's custom and practice of keeping current with California law" was, and whether Standard knew or knows "that Standard's 'Definition of Disability' violates California law." ECF No. 40-1 at 102-103. In his declaration, Mr. Harbolt says that he has no personal knowledge of Ms. Ellena, her claim, the investigation, or the group policy at issue in the lawsuit. Harbolt Decl., ECF No. 41, ¶¶ 10-11. He has only a "very high-level knowledge regarding Standard's training of its benefits staff, and the limited knowledge I have on this topic is not unique to me." *Id.* ¶ 12. The extent of his knowledge is that he is sometimes informed that training on a particular topic is being planned or rolled out, and he has a very high-level understanding of the claims administration procedures and policies. *Id.* ¶ 12. Other employees do have knowledge regarding the claims decision for Ms. Ellena's claim and claims practices and procedures, and those employees are available for deposition. *Id.* ¶ 13. He did not participate in the drafting of the definition of disability used in the policy applicable to Ms. Ellena's claim, and "any knowledge I may have concerning the legal compliance of Standard's insurance policies, and I am not saying I have any specific knowledge, would be in connection with my prior role in Standard's legal department and would be protected by attorney-client privilege." *Id.* ¶ 14.

## ANALYSIS

### I. DEPOSITION OF MR. HARBOLT

Under Rule 26(c)(1), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including forbidding a deposition, or limiting its scope. The party seeking a protective order bears the burden of showing good cause for the order by "demonstrating harm or prejudice that will result from the discovery." *Apple v. Samsung*, 282 F.R.D. 259, 262-63 (2012). When a party seeks the deposition of a high-level executive (a so-called "apex" deposition), courts have "observed that such discovery creates a tremendous potential for abuse or harassment." *Id.* at 263. The court therefore has discretion to limit discovery where the discovery sought "can be obtained from some other source that is more convenient, less burdensome, or less expensive." *Id.*

"In determining whether to allow an apex deposition, courts consider (1) whether the deponent

UNITED STATES DISTRICT COURT
For the Northern District of California

1    has unique first-hand, non-repetitive knowledge of the facts at issue in the case and (2) whether the

2    party seeking the deposition has exhausted other less intrusive discovery methods." *Id.*  However,

3    "a party seeking to prevent a deposition carries a heavy burden to show why discovery should be

4    denied." *Id.*  Thus, it is very unusual "for a court to prohibit the taking of a deposition altogether

5    absent extraordinary circumstances." *Id.*  "When a witness has personal knowledge of facts relevant

6    to the lawsuit, even a corporate president or CEO is subject to deposition." *Id.*  "A claimed lack of

7    knowledge, by itself it is insufficient to preclude a deposition." *Id.*

8        On this record, Ms. Ellena has not established that Mr. Harbolt should be deposed, and a

9    protective order is appropriate.  Mr. Harbolt has declared that he has no knowledge about the

10   information that Ms. Ellena seeks, and other people do have knowledge and are being deposed.  Any

11   inquiry about the definition of disability in a deposition can be addressed through a Rule 30(b)(6)

12   witness.

13   **II.  RULE 30(b)(6) WITNESS**

14       The next issue is whether a Rule 30(b)(6) witness should testify about the adoption of the

15   definitions regarding disability.  According to Ms. Ellena, the discovery is relevant to her prayer for

16   punitive damages due to Standard's bad faith in adopting definitions that allegedly violate California

17   law.  Opposition, ECF No. 42 at 12.  Standard opposes it as irrelevant because the issue is about

18   Standard's August 2010 denial of benefits, and under the claims manual, that group policy is to be

19   interpreted consistent with state laws.  Motion, ECF No. 38 at 18.  Moreover, Ms. Ellena began

20   working for the County only in 2008.  *Id.*   The discovery is aimed at events that predate the policy's

21   issuance in Rhode Island in 1999.  *Id.* at 19-20.

22       On this record, the court has concerns about whether addressing questions to a Rule 30(b)(6)

23   witness on this topic is asking a witness to opine about a legal conclusion.  Also, a question such as

24   "how long has Standard known that its definition violates California law" or "what were you

25   thinking when you adopted it" verges on the badgering that Standard is concerned about.  On the

26   other hand, it does seem that discovery that revealed that Standard had reason to believe that its

27   definition violated California law could be relevant to bad faith and punitive damages.  Again, a

28   Rule 30(b)(6) witness does not seem the right first step to identify the information.  The information

UNITED STATES DISTRICT COURT
For the Northern District of California

1    might be better sought through written discovery, at least as a first step.

2    On this record, the court grants the protective order without prejudice to Ms. Ellena raising it

3    again through the court's standard written discovery letter brief process.  The utility and necessity of

4    the testimony will be better illuminated by the uncontested depositions such as the PMK deposition

5    noticed for August 20, 2013 regarding the claims manuals and procedures used to review, evaluate

6    and decide disability claims from January 2009 to the present.  *See* ECF 40-1 at 88.  That is the most

7    relevant information.

8    **III.  DISCOVERY PROCEDURES GOING FORWARD**

9    The court uses a joint letter brief process to address discovery disputes.  *See* Standing Order

10   (attached).  That process allows resolution of disputes on a schedule that is much faster than the

11   standard 35-day motion schedule.  The parties must use that process going forward unless the court

12   authorizes a different approach.  *See* 8/14/13 Referral Notice, ECF No. 47.   It also will allow easier

13   access to the core issues and facts.  The parties filed hundreds of pages about a straight forward

14   issue.  Also, their declarations and attachments not only were voluminous but also were hard to use

15   to access the underlying attachments.  Exhibit numbers were buried in text paragraphs, and it would

16   have been easier to access the exhibits by name and number if they were listed up front (e.g.,

17   "attached are the following exhibits") or otherwise rendered visually accessible.  Access to

18   individual documents from the docket sheet was hard because the exhibits were attached in one big

19   lump, thereby preventing click-through access.  At least the letter brief process avoids that issue

20   because it focuses the parties on what matters.

21   The undersigned's ordinary discovery procedures usually are to schedule a telephone discovery

22   conference right after the parties submit a letter.  That allows disputes to be addressed on a case

23   management model, which in turn promotes solutions and avoids costs.  Given the interplay between

24   the previously-scheduled hearing date of August 23, the recent referral to the undersigned, the

25   timing of the PMK, and the court's unavailability until September 5, the court issues this order now

26   (as opposed to waiting until later in September) to give some guidance as to how the discovery

27   issues could be resolved.

28

1

**CONCLUSION**

2        The court grants the protective order as to Mr. Harbolt, grants the protective order as to the PMK

3    regarding the definition's adoption without prejudice to Plaintiff's raising the issue again in a joint

4    letter brief that contextualizes the utility in the context of the already-deposed PMK on the claims

5    manual and procedures, and denies the motion for judicial notice as unnecessary to the court's

6    holding (and thus as moot).  The court also denies without prejudice Plaintiff's administrative

7    motion to file a supplemental declaration because the issues can be raised in a joint letter brief.

8        This disposes of ECF Nos. 38, 39, and 44.

9    **IT IS SO ORDERED.**

10    Dated: August 23, 2013

        _____
        LAUREL BEELER
11                                        United States Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT
For the Northern District of California