UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CASSAUNDRA ELLENA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>STANDARD INSURANCE COMPANY et al.,<br><br>　　　　Defendants.<br>_____/ | No. C 12-05401 SC (LB)<br><br>**ORDER REGARDING THE PARTIES' NOVEMBER 19, 2013 JOINT DISCOVERY DISPUTE LETTER BRIEF**<br><br>[Re: ECF No. 63] |

## INTRODUCTION

Plaintiff Cassaundra Ellena worked for the County of Sonoma starting in 2008 until she stopped working in April 2010 based on her medical condition. Second Amended Complaint ("SAC"), ECF No. 6, ¶ 10.[1] She submitted a claim for disability benefits to Defendant Standard Insurance Company, which contracted to provide disability insurance to County employees. *Id.* ¶ 6. Standard Insurance denied Ms. Ellena's claim and appeal, and this lawsuit challenges that determination. *Id.* ¶ 12.

The parties now dispute whether Standard must respond to many of Ms. Ellena's discovery requests, and they have filed a joint discovery dispute letter brief asking the court to decide the

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-generated page number at the top of the document.

ORDER
C 12-05401 SC (LB)

issues. 11/19/2013 Letter, ECF No. 63. Pursuant to Civil Local Rule 7-1(b), the court finds this matter suitable for determination without oral argument and **VACATES** the December 19, 2013 hearing. For the reasons stated below, and on this record, the court the court **DENIES** Ms. Ellena's request for an order compelling Standard to produce another Rule 30(b)(6) witness and respond to Ms. Ellena's Requests for Admissions Nos. 136-160, Requests for Production Nos. 1 and 2, and Interrogatory Nos. 13-14 and 19-20.

**STATEMENT**

An issue in the case was whether the insurance policy's definitions of what it means to be disabled from one's "own occupation" or "any occupation" violated California law. *See* 6/24/13 Order Denying Motion to File Third Amended Complaint, ECF No. 36, at 5-6. Ms. Ellena previously sought to depose (1) the Vice President of Standard Insurance Services Group regarding the definition of disability in the policy and (2) a Rule 30(b)(6) witness about the same topic, including the reasons for its adoption. *See* Motion for Protective Order, ECF No. 38. On August 23, 2013, the court found that the Vice President is an apex employee without unique personal knowledge and issued a protective order preventing his deposition. 8/23/2013 Order, ECF No. 48 at 4. The court also found that the Rule 30(b)(6) testimony was at best premature, and issued a protective order preventing Ms. Ellena from asking the witness about Standard's adoption of the definition of disability. *Id.* at 4-5. The court noted its concerns about whether addressing questions to a Rule 30(b)(6) witness on this topic is asking a witness to opine about a legal conclusion. *Id.* It also noted, however, that it is possible that discovery may revealed that Standard had reason to believe that its definition violated California law and that such knowledge could be relevant to bad faith and punitive damages. *Id.* The court's view at that time was that written discovery, rather than a Rule 30(b)(6) deposition, was a better avenue to dig a little deeper into this issue. *Id.* Accordingly, the court issued its protective order preventing a Rule 30(b)(6) deposition on this topic without prejudice so that Ms. Ellena, if necessary, could raise her need for the Rule 30(b)(6) testimony after the currently-scheduled Rule 30(b)(6) deposition regarding the claims manual and procedures used to review, evaluate, and decide claims. *Id.*

On November 19, 2013, the parties filed a joint discovery dispute letter brief. 11/19/2013 Letter,

1 ECF No. 63. In it, the parties dispute whether Standard must respond to many of Ms. Ellena's
2 discovery requests. Most of these requests relate to Ms. Ellena's desire to know more details about
3 how, when, and why Standard adopted the particular definition of disability that it did. Specifically,
4 Ms. Ellena wants Standard to produce another Rule 30(b)(6) witness to testify about "whether it is
5 Standard's established practice to obtain hard copies or electronic copies of" three judicial opinions
6 that she believes are relevant to this action: *Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d
7 998 (9th Cir. 2004); *Erreca v. Western States Life Ins. Co.*, 19 Cal. 2d 388 (1942); and *Moore v. Am.*
8 *United Ins. Co.*, 150 Cal. App. 3d 610 (1984). *Id.*, Ex. A, ECF No. 63-1. She also wants Standard
9 to respond to her Requests for Admissions Nos. 136-160, which together ask Standard whether, at
10 various points in time, it "had knowledge of," or "knew" that the courts had "issued," these
11 decisions, and whether it was its "custom and practice" to "keep current" on the "law," including
12 "case law," governing disability policies in California. *Id.*, Ex. B, ECF No. 63-2. She also wants
13 Standard to respond to her Requests for Production Nos. 1 and 2, which together ask it to produce
14 "any and all writings" it "generated" that state, mention, or refer to the reasons it adopted its
15 Definition of Disability Policy Form or the definition of disability it uses in its LTD2000 Core
16 Group Policies. *Id.*, Ex. D, ECF No. 63-4. And she also wants Standard to respond to her
17 Interrogatory No. 20, which essentially asks whether from 2003 to the present Standard has sold
18 policies with the same allegedly "unlawful Definition of Disability" to other public entities in
19 California and if so to identify certain information about those entities and policies. *Id.*, Ex. C, ECF
20 No. 63-3.

21 Her other requests relate to other issues. She wants Standard to respond to her Interrogatory
22 Nos. 13 and 14, which together ask it to identify for her any lawsuits filed against it in California
23 from 2003 to the present in which a person sought benefits under a "disability policy," including
24 disability policies "sold to a public entity or individual." *Id.* And finally, she wants Standard to
25 respond to her Interrogatory No. 19, which asks it whether it contends that she has "ever
26 exaggerated or misstated any of her symptoms or limitations to any doctors or other medical
27 professionals," and if so to state "each and every symptom and limitation" and identify the date on
28 which it occurred and on what page it may be found in the administrative record. *Id.*

ORDER
C 12-05401 SC (LB)     3

1  On December 10, 2013, the district court issued an order granting in part and denying in part
2  Standard's motion for summary judgment. 12/10/2013 Order, ECF No. 79. In that order, the district
3  court, among other things, granted Standard's motion and dismissed Ms. Ellena's bad faith claim to
4  the extent that it is predicated on the theory that Standard's definition of disability is contrary to
5  California law. *Id.* at 19-20. The court noted that California law does not require insurers to quote
6  the exact language from *Erreca* or *Moore* when defining "disability"; instead, it is the insurer's
7  application of the definition that matters. *Id.* at 13. The court also noted that the relevant case law
8  also did not preclude the language Standard used here. *Id.* at 14. And absent a clear statement from
9  the California courts that Standard's definition of disability is wrong, the court could not find that
10 Standard's use of its definition constitutes bad faith. *Id.*

## ANALYSIS

## I. LEGAL STANDARD

Subject to the limitations imposed by subsection (b)(2)(C), under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. However, "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C).

## II. MS. ELLENA'S RULE 30(b)(6) DEPOSITION NOTICE, REQUESTS FOR ADMISSION NOS. 136-160, REQUESTS FOR PRODUCTION NOS. 1 AND 2, AND INTERROGATORY NO. 20

As stated above, Ms. Ellena wants to know more details about how, when, and why Standard

adopted the particular definition of disability that it did. Her proposed Rule 30(b)(6) deposition and her Requests for Admissions Nos. 136-160, however, are not appropriate. She more or less wants to ask Standard's witness whether it knows about three main insurance opinions and how it "keeps up" with current California law. In the letter, she says that she needs this information because "an insurer's use of an unlawful definition of disability can support a finding of conscious disregard of the rights of its insureds," and "a finding of conscious disregard supports a verdict for punitive damages." 11/19/2013 Letter, ECF No. 63 at 1 (citing *Hangarter*, 373 F.3d at 1013-14; *Moore*, 150 Cal. App. 3d at 637-38). But as described above, the district court has dismissed Ms. Ellena's bad faith claim to the extent that it is predicated on the theory that Standard's definition of disability is contrary to California law. 12/10/2013 Order, ECF No. 79 at 19-20. Ms. Ellena's reason for wanting the discovery, then, is no longer relevant. Moreover, as Standard points out, Ms. Ellena's line of inquiry may run afoul of the attorney-client privilege between Standard and its attorneys, *see People v. Speedee Oil Change Sys., Inc.*, 20 Cal. 4th 1135, 1146 (1999) ("The attorney-client privilege is a hallmark of our jurisprudence that furthers the public policy of ensuring "the right of every person to freely and fully confer and confide in one having knowledge of the law, and skilled in its practice, in order that the former may have adequate advice and a proper defense.") (internal quotation marks, citation, and footnote omitted), and she makes no argument in response. *See* 11/19/2013 Letter, ECF No. 63 at 1-2 (Ms. Ellena's argument), 4 (Standard's argument).[2]

Her Requests for Production Nos. 1 and 2, which together ask it to produce "any and all writings" it "generated" that state, mention, or refer to the reasons it adopted its Definition of Disability Policy Form or the definition of disability it uses in its LTD2000 Core Group Policies, and her Interrogatory No. 20, which asks whether Standard has sold policies with the same allegedly unlawful definition of "disability" to other public entities in California and if so to identify certain information about those entities and policies, also are not appropriate here. For one, the "writings" may be protected by the attorney-client privilege. But even if they are not, the information her

---

[2] In a federal action based on diversity jurisdiction (as this one is), state law governs attorney-client privilege claims. Fed. R. Evid. 501; *Star Editorial, Inc. v. United States District Court for the Central District of California (Dangerfield)*, 7 F.3d 856, 859 (9th Cir.1993).

ORDER
C 12-05401 SC (LB)                          5

Requests for Production or her Interrogatory seek is not relevant. As the district court ruled, California law does not require insurers to quote the exact language from *Erreca* or *Moore* when defining "disability." 12/10/2013 Order, ECF No. 79 at 13. Instead, it is the insurer's application of the definition that matters. *Id.* at 13. Ms. Ellena's argument that "Standard's own statement of its reasons for adopting the 'Definition of Disability' may reveal that Standard re-wrote the definition of disability required by California law knowingly to maximize its profits" is unavailing, then, because the applicable California law automatically applies. *See Interinsurance Exchange v. Ohio Cas. Ins. Co.*, 58 Cal. 2d 142, 148 (1962) ("It is well settled that insurance policies are governed by the statutory and decisional law in force at the time the policy is issued. Such provisions are read into each policy issued thereunder, and become a part of the contract with full binding effect upon each party."). And her argument that "whether Standard has included this same unlawful Definition of Disability in [other] policies" is relevant to punitive damages also is unavailing because it is not relevant to how Ms. Ellena's claim was administered. Accordingly, Standard need not produce another Rule 30(b)(6) witness or respond to Ms. Ellena's Requests for Admissions Nos. 136-160, Requests for Production Nos. 1 and 2, or her Interrogatory No. 20.

### III. MS. ELLENA'S INTERROGATORY NOS. 13 AND 14

Ms. Ellena's Interrogatory Nos. 13 and 14 also are not appropriate here. As stated above, these interrogatories together ask Standard to identify for her any lawsuits filed against it in California from 2003 to the present in which a person sought benefits under a "disability policy," including disability policies "sold to a public entity or individual." She conclusorily asserts that this information "would likely" lead to the discovery of admissible evidence "concerning, among other things, Standard's claims practices, the extent to which Standard uses the 'Definition of Disability' in California, and the existence of depositions of Standard personnel testifying about how Standard evaluates similar or even identical claims." 11/19/2013 Letter, ECF No. 63 at 5. Citing several opinions from district courts in Pennsylvania, Standard objects to producing this information on the grounds the request is overbroad because disability claims are decided based on unique facts, seeks irrelevant information that is akin to a "fishing expedition," and would be unduly burdensome to produce, especially in light of the availability of this information from legal research sources. *Id.*;

*see Graham v. Progressive Direct Ins. Co.*, Civil Action No. 09-969, 2010 WL 3092684, at *1 (W.D. Pa. Aug. 6, 2010) (denying reconsideration of the court's order adopting a special master's recommendation that Plaintiffs are not entitled to discovery of similar claims information, or information regarding Defendant's valuation of insurance claims by other local claimants for shoulder and knee injuries, which are similar to the claim for benefits made by Plaintiff); *McCrink v. Peoples Benefit Life Ins. Co.*, No. Civ.A.2:04CV01068LDD, 2004 WL 2743420, at *6 (E.D. Pa. Nov. 29, 2004) (refusing to compel insurer to produce information concerning its previous denial of claims based upon the motorcycle exclusion, including the names of previous claimants, litigation information, and the names of the employees that handled and processed the claims, because "[i]nformation about previous litigation concerning the motorcycle exclusion can be obtained from Westlaw or Lexis" and "most of this information is likely to be irrelevant, particularly because insurance litigation rests upon particular factual circumstances, which are likely to differ significantly from case to case"); *Cantor v. Equitable Life Assurance Society of United States*, 1998 WL 306208, at *3 (E.D. Pa. June 9, 1998) (refusing to compel insurer to identify all cases in which insurer requested physical or psychiatric examination for insureds who suffered disability for past five years because information available through Westlaw or Lexis); *Fidelity and Deposit Co. of Maryland v. McCulloch*, 168 F.R.D. 516, 525-26 (E.D. Pa. 1996) (refusing to require insurer to identify "by caption, court and docket number all lawsuits brought by or against other [Fidelity] policyholders in which coverage under [a Fidelity] policy was disputed, and in which" the relevant Policy provisions were disputed because "[a] few minutes on Westlaw or Lexis should suffice to locate any judicial opinions construing the Policy provisions at issue here" and movant's other arguments "amount[ed] to nothing more than the "fishing expedition"); *Shellenberger v. Chubb Life America*, 1996 WL 92092, at *3 (E.D. Pa. Feb. 29, 1996) (refusing discovery of similar suits regarding payment of "own occupation" disability benefits because existence of previous suits irrelevant for purposes of whether defendants acted in bad faith in denying plaintiff's claim). The court finds the reasoning of these opinions to be persuasive, and Ms. Ellena makes no attempt to distinguish them or point the court to authority suggesting a different outcome. Under these circumstances, the court will not require Standard to respond to Ms. Ellena's Interrogatory Nos. 13

## IV. MS. ELLENA'S INTERROGATORY NO. 19

The court also will not require Standard to respond to Ms. Ellena's Interrogatory No. 19. It asks Standard whether it contends that she has "ever exaggerated or misstated any of her symptoms or limitations to any doctors or other medical professionals," and if so to state "each and every symptom and limitation" and identify the date on which it occurred and on what page it may be found in the administrative record. The reason she wants this information is because "[a]t trial, Standard will doubtless attack [her] credibility as a witness based on her communications with her health care providers," and "[u]nder the rules of discovery, Standard should not be allowed to avoid answering a contention interrogatory that directly inquires into the factual basis of a matter that has been put at issue by Standard—[her] credibility." 11/19/2013 Letter, ECF No. 6.

Standard makes two arguments against producing this information. First, she contends that she need not produce it because Rule 26(a)(1)(A)(i) requires parties to provide as part of their initial disclosures "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." (Emphasis added.) Standard provides no other authority supporting this position, and as one court in this district has noted, it appears that the authority that does exist on this point reasons that while Rule 26 exempts impeachment materials from a party's initial disclosures under subsection (a), that does not necessarily mean that impeachment materials are immune from discovery under subsection (b). *See Batts v. County of Santa Clara*, No. C08–00286 JW (HRL), 2010 WL 3629694, at *4 (N.D. Cal. Sept. 14, 2010) (citing *Varga v. Rockwell Int'l Corp.*, 242 F.3d 693, 697 (6th Cir. 2001)). Second, Standard argues that it cannot be required to produce the information because its "evaluation of evidence produced in discovery, and its determination of what documents it may rely upon to impeach [Ms. Ellena], constitutes attorney work product (trial strategy) and privileged communications." 11/19/2013 Letter, ECF No. 7. The court agrees that the information is protected under the work product doctrine. To require production would be to require Standard to produce the strategy of its counsel at trial, and Ms. Ellena has made no attempt to argue that Standard has waived

the doctrine's protection or that it should be overcome. *See Batts*, 2010 WL 3629694, at *4 ("As to the documents that have been produced, this court concludes that defendants need not identify which of those documents (or portions of them) might be used to impeach Batts at trial because revealing such information would unnecessarily infringe upon defense counsel's work product. There is nothing in the record presented that establishes any waiver. Nor has Batts demonstrated a substantial need for the materials that outweighs defense counsel's interest in preserving their work product."). Accordingly, Standard need not respond to Ms. Ellena's Interrogatory No. 19.

## CONCLUSION

For the foregoing reasons, the court **DENIES** Ms. Ellena's request for an order compelling Standard to produce another Rule 30(b)(6) witness and respond to Ms. Ellena's Requests for Admissions Nos. 136-160, Requests for Production Nos. 1 and 2, and her Interrogatory Nos. 13-14 and 19-20.

This disposes of ECF Nos. 63.

**IT IS SO ORDERED.**

Dated: December 13, 2013

LAUREL BEELER
United States Magistrate Judge